Fatheree and wife *v.* Lawrence.

JOHN FATHEREE and wife *v.* JAMES LAWRENCE.

1. WILL: PROBATE OF: WHAT IS SUFFICIENT EVIDENCE IN CASE OF AN OLD WILL.— An instrument, purporting on its face to be the last will-and testament of E. L., bearing date the 7th of September, 1833, was propounded for probate in 1856; it was signed by the testatrix by her mark, and under the word "Test" was subscribed the names of two witnesses. In December, 1833, soon after the death of E. L., it was filed for probate, and one of the subscribing witnesses made an affidavit, setting forth facts sufficient to probate the will, except that he did not state that the will was attested in the presence of the testatrix. No order or decree was made in relation to the will, or the estate of the decedent, but the will was recorded in the proper book. In 1856, one of the legatees propounded the will for probate, taking it from the files of the Probate Court, where it had remained from the time of the filing in 1833, and produced one of the subscribing witnesses, who proved the handwriting of the other witness, and that he was dead. He also proved that he wrote the will, and the name of the testatrix, and that his name was subscribed in his own handwriting. The witness had no independent recollection, of the execution of the will, and the circumstances attendant thereon; nor did he then recollect whether, at the date of the will, he knew what formalities were requisite for the valid execution of a will, and thought it possible that he might have attested an instrument not legally executed; but he was satisfied, from an inspection of the instrument, of the truth of the facts above stated, and was also satisfied that he would not have subscribed the testatrix's name nor his own, unless he had been requested to do so by her. He also proved that the will was intended to be executed in good faith, and that it was generally understood amongst the relatives of the decedent, that she had made a will. The property disposed of by the will, had never been held in subordination thereto, but adversely, by the heirs. Held, that under the circumstances,—the will having on its face all the formalities required by the statute to appear there,—it might properly be presumed, that the other incidental requisites were also complied with, and that the will was sufficiently established. See *Jackson* v. *Luguere,* 5 Cow. 221; *Fitherly* v. *Waggoner,* 11 Wend. 599; *Jackson* v. *La Grange,* 19 John. R. 386; *Clarke* v. *Dunnavant,* 10 Leigh. 13; *Dudleys* v. *Dudleys,* 3 Id. 443.

2. SAME: STATUTE OF LIMITATIONS: ADVERSE POSSESSION.—There is no limitation as to the period in which a will may be probated, and hence a long-con-

tinued possession of the estate, adverse to the will, is no presumption against its validity, unless it be shown that the devisee propounding the will for probate, was under no disability, and that there was no impediment to the assertion of his rights, and that his acquiescence was tantamount to a disclaimer under the will, with a full knowledge of its legal character.

3. SAME: WHAT SUFFICIENT ATTESTATION: NO PARTICULAR FORM NECESSARY.— The object of the statute in requiring a will to be attested by the subscribing witnesses, in the presence of the testator, so far as the form of the attestation is concerned, is to identify the instrument, as that signed and published by the testator, and to prevent fraud and imposition in establishing spurious wills, and at the same time, to show the persons, by whom the facts necessary to establish the will can be proven, when the will shall be propounded for probate; and all that is necessary for these purposes is, that the witnesses shall sign their names upon the paper in presence of the testator; and hence, it is well settled, that no particular form of words is necessary to constitute an attestation. 1 Jarman on Wills, 74; Willes R. 1; 6 Dow. Parl. Rep. 202; Preston on Legacies, 18; 6 Cruise Dig. 57; 2 Strange, 1109.

4. SAME: RULE IN CASE OF DEFECTIVE EXECUTION TO PASS REALTY.— A will purporting on its face to dispose of both real and personal estate, but not attested so as to pass the former, is not, for that reason, incomplete and inoperative as to the entire estate. In such a case, it is a question of fact, whether the testator intended that the testament should operate as to the personalty, unless it could take effect as to the realty; and if it appeared by the testimony of the subscribing witness, that the testator published the instrument as a complete testament, the presumption will be, that he was ignorant of the law requiring three witnesses, and the will, although insufficient to pass realty, will be rated as to the personalty. See *Jones* v. *Kea*, 4 Dev. 302.

5. EVIDENCE: WILL: PRESUMPTION IN FAVOR OF COVERTURE.—The presumption in favor of the continuing relation of husband and wife, will not prevail to defeat the will of a female, who is shown to have been once married, where the will disposes of property which would have belonged to the husband, if alive, and where the contestants failed in the court below to raise that objection, and to introduce any proof tending to show that the husband was living when the will was made.

APPEAL from the Probate Court of Copiah county. Hon. J. Millsaps, judge.

A full statement of the case will be found in the opinion of the court.

*George S. Porter,* for appellants.

I. It is proper, at the outset, to notice what are some of the consequences to follow, if this paper will be declared a will.

The writing gives James Lawrence, the person now demanding probate, "a certain negro girl named Harriet." It is a fact admitted, that Thomas D. C. Lawrence, the intestate of defendants, had this slave in his possession, at his death and for several years before, under a bill of sale, executed in February, 1840, by W. H. Lawrence, who was a distributee of said Elizabeth.

This slave, and whatever increase she may have, is held by the defendants as parcel of the estate of said Thomas D. C. Lawrence; and the scheme of probating this musty paper is to obtain the slave and her increase, which has thus been held for sixteen years as parcel of his estate, and a large account for hires. If any excuse, any plausible pretence were shown for this great delay, there might, upon a proper state of facts, be some reason for this demand for a probate on presumption.

If the will had been lost or concealed, if the party had innocently remained ignorant of its existence, he might with some good assurance, even now come, making the best proof he could, and asking all fair presumptions in his favor, to defeat an innocent purchaser, and a sixteen years' possession; but he wholly omits even the pretence of excuse or explanation. He not only asks the court to create a will, on presumptions, for him, but demands that it shall presume there was sufficient cause for an apparent laches of twenty-three years.

The paper purports to have been signed by Mrs. Lawrence, by her mark, and to be witnessed by George Ellis and George Ellis, Jr.

George Ellis died about the 3d October, 1833, a month after the date of the will.

George Ellis, Jr., was examined as a witness. He says, "All he distinctly recollects about the transaction is, that said Elizabeth Lawrence made a will, but from lapse of time, all the circumstances connected with, and attending its execution, have faded from his memory." "He has no independent recollection of writing said will, of signing it as a witness, or of signing the supposed testatrix's name thereto, and that he only believes that he wrote it, signed it as a witness, and signed her name thereto, from the handwriting, believing it to be his own." "He recollects nothing about the execution of the instrument."

He was living with his father (the other witness) at the date of

the instrument; "thinks" that Mrs. Lawrence was there then. That she was sick at his father's house—he does not say when. "He believes" the instrument is in his handwriting; "thinks" it was written whilst she was sick at his father's. "He believes" he signed the name of the testatrix to said instrument, and is "satisfied," on inspection, that he did. "He believes" his name is signed as a witness thereto. Knew his father's handwriting "tolerably well," and "believes" his signature is thereto as a witness. He had entirely forgotten that he had written the instrument, but is satisfied, on inspection, that he did; only recollects there was a will from having written it; cannot say whether they signed as witnesses in her presence. "Supposes," but cannot say, she was of sound and disposing mind. "He believes" the intent was to execute said writing in good faith. Thinks he would not have witnessed a will not duly executed, "but he might have subscribed an illegal will" (he means he would not have wilfully witnessed a will unduly executed, but might have done so through ignorance). "Few men of the masses knew what was a legal instrument; does not know that he does."

It is manifest this proof is insufficient; it fails to show an attestation in the presence of the testatrix; it is vague and uncertain even as to signatures.

The burden of proof is on the propounder; he must show a will duly executed. If there are circumstances of suspicion affecting his case, he must explain or overcome them. If presumptions arise against him, he must rebut them.

None of the estate has been held under the will; but, on the contrary, the possession has been adverse to it.

It is manifest that the witness did not recognize the signatures of himself or father as genuine. He could not swear from mere inspection of his written name, that he signed as witness. But he saw, by his affidavit, made in 1833, that he had sworn as a subscribing witness, and sworn that he saw his father sign, and therefore, he now says, he "believes" they did sign as witnesses. Such proof is much too vague, to authorize a court to find the paper was witnessed at all; and if this be so, there is an end of the case; there is no will.

The propounder admits he has no original evidence to prove the

will.  He assumes what is not proved, that the paper was sub-
scribed by a witness or witnesses.  He assumes that Mrs. Lawrence
signed the paper, although the witness says he signed it, but does
not say it was done by her "express directions"; and in fact that
the name was written for a signing by mark, is conclusive that it
was not written as and for her signature.  He may assume that she
made her mark, but there is nothing to show it was made by her
or for her.

Now let us admit this unfounded assumption, that the witnesses
subscribed their names, and see how the case stands.  The theory
of the propounder is, that upon mere proof of the signatures of
the witnesses, the court will presume the paper was duly signed,
published, and declared by Mrs. Lawrence, as and for her will, and
that the witnesses subscribed their names thereto at her request,
and in her presence.  And he is constrained to rest his whole case,
on this mere presumption.

But, mark the fact: this writing is twenty-three years old, and ought
to have been and would have been, if it be a duly executed will,
probated many years ago.  It is a stale claim, and no excuse what-
ever, is pretended for this very great delay.  The court cannot pre-
sume the party had any reason for the omission to procure probate,
except the fact that the paper was not duly executed as a will.

It so happens, in this case, that the propounder who comes to
create a presumption, is met by paramount counter-presumptions.

In the first place, "it is a very sensible rule that parties shall
not, by neglecting to bring forward their demands, put others to a
state of inconvenience, subjecting them to insuperable difficulties.
Against such a bill, the court ought undoubtedly, to set its face."
The court will reject it on "public considerations," as against public
policy.  "Every presumption that can fairly be made, shall be
made against a stale demand."  *Pickering* v. *Lord Stamford*, 2
Ves. Jr. 582, 583; *Tevis* v. *Eliza*, 7 Dana, 399; Ib. 418.  Even
Acts of Parliament and grants from the crown, will be presumed in
aid of long possession.

It is idle to pretend that this rule cannot apply to this contro-
versy, inasmuch as it is not a direct suit for property.  This pro-
bate is sought for a purpose.  It is an indispensable preliminary
to such a suit, and is plainly intended for that very purpose.  The

sole object is to probate the paper; establish a right of action, commencing with the probate, and therefore not barred; and then to sue defendants, for the slave, named in this paper, as a bequest to the propounder, and her increase.   1 Lomax on Exrs. 188, 189.

As the court would, in a direct suit for the slaves, indulge all fair presumptions in favor of the long possession of defendants, so it will not indulge presumptions, in order to probate this stale paper, and thus surely deprive them of the benefit of those presumptions. Otherwise a party may gain by circumlocution, when he would fail in a direct proceeding.

As he has delayed so long, without excuse shown, " the court is set" against him; all presumptions are against him; he comes too late to ask the indulgence of presumptions in his favor.

In England, where a will is offered for probate after five years from the death, " the delay must be satisfactorily accounted for." 1 Williams' Exrs. 204 (205).

II. If this were not a stale demand, it would not be within the rule for which the propounder contends.   Proof, by merely proving the signatures of subscribing witnesses, is but secondary evidence; and it is admitted, only because it is presumed better evidence has existed, which the party is unable, from some cause, to produce.   It is only on the supposition, that these witnesses did once know that Mrs. Lawrence signed and published this paper as her will, &c., that the court is now asked to presume, from their signatures as witnesses, that those circumstances did exist.

This sort of proof arises from necessity, and is not evidence under oath.   Proof must, it is true, be made of the signatures of the witnesses; and to that extent, there is sworn testimony; but those witnesses are third parties, not at all interested in the controversy: it is not their property that is involved.   When you find their signatures as witnesses, proven, you presume they saw certain acts done by the alleged testator, and that they would so swear if they were present and had not forgotten.   In such cases the signature of the subscribing witness is, by presumption, made an ex parte statement, and it is not sworn to.

It all rests on the supposition that the necessary facts exist, and that they were once known to the witness.   But the propounder has proved that, in this case, those supposed facts were never

Fatheree and wife *v.* Lawrence.

known to either of these witnesses, and that therefore his case is not within the rule.

This paper bears date the 7th of September, 1833, and Mrs. Lawrence died soon thereafter. On the 22d of December, 1833, George Ellis, Jr., one of the subscribing witnesses, was produced in the Probate Court to prove this paper, which had been "filed for probate" on the 11th of that month. He swore that he saw Mrs. Lawrence sign the paper, and heard her publish it as her will; and saw his father, the other witness, sign it. He did not swear that either he or his father signed in her presence.

He was sworn to tell the whole truth; it was his duty to state all; and the presumption is that he did tell every fact he knew tending to prove the will. He has thus already deposed, and there is no room to presume he knew more, in favor of the will, than he then swore to, when the facts were fresh in his memory. This testimony was reduced to writing, and signed by him at the time, and was incorporated in his testimony on this trial.

I think it plainly appears, that the two witnesses signed at the same time. George Ellis, Jr., swears that he wrote the paper, and signed the name of Mrs. Lawrence. He was the active agent in the matter. He did not sign his name as a witness, and then hand the paper to her in order that other witnesses might sign as they could be found; but he got his father to sign first, and then immediately signed himself. He states, in the old affidavit, that he "saw" his father sign. It was a matter of course for the draftsman employed, to attend to the ceremonial, to sign at the time when the other witness signed. Add to this the fact he proves, that he then lived with his father, and Mrs. Lawrence was at the house sick, and it is clear the two witnesses signed at the same time. If one did not sign in her presence, the other did not. As the old affidavit of the son shows, he did not sign in her presence, so neither did the father. There is therefore no ground to presume that either of them ever could have proved the due execution of the paper.

III. The result is the same, if we test the case on presumptions. The propounder asks the court to presume that this writing was duly signed and published by Mrs. Lawrence, and that the witnesses duly attested and subscribed in her presence. There is no attest-

ing clause, no recital, nothing on the face of the paper to create such a presumption. If due execution be presumed, that presumption must arise from the mere words: "Test, George Ellis, George Ellis, Jr.":

In ordinary wills, even, there is an attesting clause which briefly recites the facts necessary to the due execution of the will; and there may be strong grounds, on a proper showing, to presume the facts were as they are stated in the attesting clause; but there is no such thing here. We have but the word "test," and the signatures; and the court is asked to presume, that parties ignorant of the forms and ceremonials required by law, intended, by so signing, to bear witness that all those forms and ceremonials were, in that case, duly observed. The court is asked to presume that this word "test" may be, and should be, amplified into an assertion that Mrs. Lawrence duly "signed, published, and declared" this instrument "as and for her last will and testament," and that the witnesses attested the same and subscribed their names thereto "at her request and in her presence;" and all this is to be presumed because that little word "test" was subscribed by two persons who were wholly ignorant how a formal will should be executed. If all this did happen, it was accidental.

But suppose those words are sufficient, prima facie, to prove the due execution of the paper, this sort of proof is "merely circumstantial, and may be met by other circumstantial evidence.". *Murdock* v. *Hunter*, 1 Brock. 135; 28 Eng. Com. Law, 20.

Judge Marshall, considering the sufficiency of such proof, would only say he was "inclined to the opinion" that proof of signatures, where the witnesses could not be had, "in a case unsupported and unopposed by any other circumstance whatever, would be deemed sufficient." *Murdock* v. *Hunter*, 1 Brock. 143; 25 Wend. 274, 276; *Farnsworth* v. *Briggs*, 6 New Hampshire, 566, 567; 3 Stark. Ev. 936. We meet presumption by presumption.

This paper bears date, and Mrs. Lawrence died, in 1833. This attempt to probate is made in 1856. No excuse whatever is pretended for this gross laches. The existence of this writing was well known, at her death, among the family; and it is not pretended that the propounder was ignorant of its existence, or was under any disability. If there was any excuse, anything to rebut pre-

sumptions arising from his delay, it was for him to show them; but he does not deign to say, why he thus delayed until the subscribing witness had forgotten, both the paper, and all the particulars of the transaction. If he had been in possession of the property, we might imagine that he neglected to make the proof of his title; but, throughout all this time, for near a quarter of a century, he has been out of possession, and others have held the property, adverse to the will.

Men are presumed to act according to their own interests. 2 Phil. Ev. (Cowen & Hill) 301.

A man will be presumed to do " that which tends to his obvious advantage, if he possess the means." 1 Stark. Ev. 563.

If this be a valid will, why did not James Lawrence, the present propounder, have it proven in 1833, and thus obtain the property bequeathed to him; why has he delayed for twenty-three years?

The propounder asks the court to presume two things: First. That these persons, ignorant witnesses, and an ignorant old lady unable to write her name, and signing "by her mark," were able, by some lucky accident, to observe all the formalities required by the statute. Second. That these men were honest witnesses, and intended, by the use of that word " test," to certify a fact they did not know, that all was done pursuant to law. It is a blind faith that believes that those ignorant of law have complied with legal ceremonies; and yet the propounder here is constrained to demand that sort of faith.

Against that presumption, we oppose the fact of long-continued adverse possession, with his knowledge and tacit consent, and his extreme delay, with full knowledge of this paper, and that his only right to the slave depended on proof that it was a will. Self-interest prompted him to procure the probate, and thus obtain the property; and the law presumes he would have so done, "if he possessed the means." He did not do so, and the presumption is that " the means" (the legal proof required for a probate), were wanting.

It has been held that, " if a deed has never been put to use, and especially if the right which it professes to give, has been denied by an adverse possession, then the longer the deed has existed the stronger is the presumption that it is not a genuine instrument." *Willson* v. *Betts,* 4 Denio, 215.

The presumption arising from the conduct of James Lawrence, the propounder, utterly destroys any presumption that can arise from the fact that ignorant witnesses have signed that most indefinite little word "test."

As the due execution of an instrument may be presumed from the acquiescence of those interested to contest it (2 Burr. 1073); so it is a very strong presumption against the validity of a will, that a party, who can only claim under it, withholds it from probate, until memory of the transaction is destroyed.

A like presumption arises from the conduct of defendant's intestate, Thomas D. C. Lawrence, the son of the supposed testatrix. By this paper she gave him the greater part of her estate; and yet he, thus largely interested to obtain probate of this paper, not only neglects to do so, but purchased, from a third party, the slave bequeathed to the propounder,—invested his money knowing the supposed will was void. Those interested under the supposed will, and those interested against it, knowing the facts, which cannot, at this remote time, be proven, acted on a concurrent opinion that the paper was null, and wholly disregarded it in the distribution of the property. If the mere signature of a deceased witness, raises the presumption that this paper is a will, the conduct of the legatees, against their interests, and the conduct of the family when cognizant of the facts, wholly destroys that presumption, and proves the nullity of the instrument.

We have said these parties were ignorant persons, unacquainted with the forms of law; which fact, of itself forbids the presumption that all things were regularly and formally done in the execution of this paper as a will. Mrs. Lawrence could not write her name, but made her mark. It is not pretended she did so because of weakness from disease; and it would seem most strange, in Copiah County, to hear that a learned court had presumed that a female was exceedingly debilitated, merely because she had put a mark as her signature. That mark is the badge of ignorance. And being so ignorant of first lessons, we cannot presume her conversant with the forms of law; and indeed, the mere fact of her sex rebuts that presumption. George Ellis, Jr., does not pretend that he or his father knew what the law required to be done in such cases; on the contrary, he swears they did not. Speaking of the formal execution

of wills, he says : " Very few of the masses knew what a legal instrument was ; that legal gentlemen might know, but he does not know that he did."

The absence of the very common attesting clause, proves that these parties had not experience or knowledge in such matters. As between the witnesses, it is plain the elder Ellis was even more ignorant in such matters than his son, since the latter, although wholly unskilled, was selected to prepare the paper. Indeed, there is no proof that the father knew he was called to witness a will : the paper concludes, and is signed and sealed as a deed. If this document had been prepared and executed under the direction of a learned attorney, there would be grounds to presume it was properly done; but here there arises the counter-presumption, that ignorance, blunders invariably, in matters of form.

3. This paper bears date the 7th September, 1833, and Mrs. Lawrence died soon after. It was received in the Probate Office, and " filed for probate," on the 11th December of that year ; and on the 22d of that month, the witness, George Ellis, Jr., was produced, in open court, to prove it as a will. There was an intent to probate, and the whole transaction was fresh in the memory of the witness ; but the attempt failed. The witness proved the signing, publication, and witnessing ; but he could not prove the important matter, of an attestation in the presence of the testatrix. The vital omission in his sworn testimony, is fatal to any presumption derived from the mere signatures of the subscribing witnesses. We cannot presume the witness knew any fact, material to establish the will, that he did not swear to. The rule on which the propounder now relies, is founded on the presumption, that the subscribing witness knew all the material facts, at the time he subscribed, and that he would prove them, if he could be produced ; or if he is produced at so late a time, that he may have forgotten, and does not remember the facts, it is sometimes presumed, that he did know, but has forgotten them. What becomes of that sort of presumption, when we show the witness was produced, while the facts were very recent, and could not prove a due execution ?

We must presume he knew the contents of the statement he subscribed and swore to ; and that if there was an omission in it of a vital matter that he knew,—if there was in fact an attestation in

her presence, he would have seen that it was corrected.   We are bound to presume that he could not prove the important fact omitted in his affidavit.   Although he was ignorant, he was not *inops concilii* then; he was examined in open court, and the extent of his knowledge of facts, material to sustain the will, was carefully ascertained.   We can hardly presume that he carefully observed all formalities, in the execution of the will,—that he knew what was necessary, and saw it done, but omitted to state all, in a solemn narrative of the facts, reduced to writing, and signed and sworn to by him; that would be giving greater effect to the written name of a witness, than to his statements under oath,—to reject him as a sworn witness, and prove the case by his signature as attesting witness.

But it may be said, that although George Ellis, Jr., was not a legal attesting witness, we are bound to presume that George Ellis, Sr., was.   The case precludes that presumption.   We have shown that the parties were ignorant,—the father more ignorant than the son,—neither knew the formal requisites of a will; and the testatrix was in the same predicament.   We have shown that these two witnesses subscribed their names at the same time, and there is no proof to show the place where they signed.   As they signed at the same time and place, if the one did not sign in her presence, it is certain the other did not.   The son was the chosen draftsman of the will, the selected director of the ceremonial, and when we show that he did not sign in her presence, there is no room for presumption that his father did.

Some one filed this paper for probate, and thereafter produced the witness to prove it.   Undoubtedly this attempt was made by the legatees, or one of them.   No other person was interested to do so.   Why was not this paper proven then?   There was the same ground to presume that George Ellis, Sr., signed in the presence of Mrs. Lawrence then, that there is now; and the paramount counter-presumption, arising from subsequent conduct of the parties, did not then exist.   We must presume there were sufficient reasons then, against such a presumption, else why did the parties delay to demand a probate, upon that presumption, until all memory of the facts had ceased?   We do not know who were opposing the probate; we cannot now say what were the particular facts

they could urge against it; but it is certain they were known, sufficient, and conclusive, for the propounders abandoned the attempt.

If the facts had been, as the court is now asked to presume they were, it is certain this paper would have been probated in 1833. The witness says, it was "the common understanding," among the relatives of Mrs. Lawrence, that she had made a will. We see that steps were taken to probate it, an investigation had, and the nullity of the instrument admitted, by an abandonment of the attempt.

The face of the paper raises a presumption that outweighs any presumption arising from the mere signature of Geo. Ellis, Sr., or both of the witnesses. It recites that Mrs. Lawrence had a "son," a "daughter," &c. She had children, and the law presumes they were born in lawful wedlock—that is to say, she was lawfully married. She once had a husband, whose existence being thus shown, the law presumes his continuance in life, in the absence of proof to the contrary. No such proof was attempted, and there is a stronger presumption, that Mrs. Lawrence was a married woman, at the date of this writing, than there is, that it was executed according to the forms of law. Was it this fact of coverture, that induced the parties to abandon the attempt to probate?

Again: this paper purports to devise lands,—an "improvement," in this State, and a tract in Louisiana. It is signed by but two witnesses, and is inoperative as a will of land. If, as the propounder insists, the parties knew the law, we are bound to say the intent was to have another witness to the paper, and that it was not regarded as a finished will. In such cases the law presumes the writing is inchoate and inoperative, even as to personalty; and such presumption is conclusive, unless rebutted. 1 Williams on Exors. 51.

In this instance there is no rebutting proof; but, on the contrary, all the circumstances of the case go to strengthen and confirm it. The unexplained, unaccountable conduct of the parties in interest,— their neglect to procure probate and obtain the property, is conclusive proof that this paper is inoperative.

The defendants offered transcripts of the proceedings, in the same court, on the probate of other wills in 1833, and they show that the then presiding judge was not rigid in exacting proof of a full

compliance with law; although he seems always to have required proof of an attestation in the presence of the testator. These transcripts embrace all the cases of probate in that court during the years 1831, 1832, 1833. The propounder also offered a transcript, not from the records, but from the files of the clerk. The transaction seems to have been in September, 1830, and there is no minute or other evidence that the court was held in that month. The defendants objected to this proof, and properly, for no judicial act is shown; the clerk seems to have acted, but the court did not. If it be urged that the court did probate Grant's will, on that very defective proof, the omission to admit this paper to probate shows there was some fatal objection to it.

Reviewing all the circumstances, it is clear the propounder has failed to prove his case; the weight of the evidence is greatly against him. If it can be said he has proved the signatures, they furnish the only ground for a slight presumption in his favor; whilst the presumptions are strong and multiplied against him. It is idle to array that one weak presumption, founded on the mere names of two ignorant persons, against the counter-proofs; his great delay showing he knew the paper was null; his long acquiescence in the adverse enjoyment by others, of the property he seeks to claim through this alleged will; the apparent coverture of Mrs. Lawrence; the paper apparently imperfect for want of a third witness to complete it as a will of lands; the ignorance of the witnesses and testatrix; the nearly direct proof of the draftsman and manager that the witnesses did not sign in her presence; the abandonment of an attempt to probate whilst the facts were known; the acquiescence of all parties, and the common consent of the family that the paper was worthless; the fact of an attempt to probate, when it is ascertained that the surviving witness has forgotten all particulars.

This indulgence of a presumption, founded on mere proof of the signatures of witnesses, is permissible only when the case is free from suspicion; or, as Judge Marshall expressed it, when that evidence is "unopposed by another circumstance whatever." Here there are circumstances, suspicions, presumptions multiplied, against the paper, and no attempt to excuse or explain.

The fact that this is a stale demand, and it is against public

policy to disturb the distribution of property enjoyed and acquiesced in for a quarter of a century; the fact that the propounder proves the witnesses did not sign in her presence, and thus prevents any presumption that they did; the fact that there are so many other, and so strong, presumptions against this instrument, conclude all controversy. The supposed will cannot stand.

IV. Although entirely unnecessary to secure a reversal and dismissal of this cause, I make another point proper to be decided.

Our statute requires that the will, signed by the testator, shall be "attested," &c. We have here only the word "test" signed by witnesses. Is this an attestation, within the statute? If the statute had required only subscribing witnesses, the difficulty would not arise; but the courts draw a marked distinction between the terms.

"To attest a will is to know that it was published as such, and to certify the facts, required to constitute an actual and legal publication; but to subscribe a paper ·published as a will, is only to write on the same paper the names of the witnesses, for the sole purpose of identification." *Swift* v. *Wiley*, 1 B. Monr. 117.

The practice of the profession, here and in England, proves this definition correct, and at the same time furnishes the reason why few cases are to be found on the subject.

The question has been raised upon instruments, executed under powers, and this distinction fully recognized.

In *McQueen* v. *Farquhar*, 11 Ves. Jr. 467, where the deed was to be executed "in the presence" of witnesses, Lord Eldon held a formal attestation reciting the facts, unnecessary.

In *Wright* v. *Wakeford*, 17 Ves. Jr. 457, the attestation of witnesses was required, and the same judge held a recital of the facts necessary. Referring to *McQueen* v. *Farquhar*, he said, "This deed certainly raises a question, not in any degree decided by *McQueen* v. *Farquhar*: that was the case of powers to be executed in the presence of witnesses; but it was not required to be attested by witnesses."

When the same case was referred, for opinion of the judges, they held the facts should be attested. 4 Taunt. 223, 224.

In *Doe* v. *Peach*, Lord Ellenborough said, "There must be an

attestation of its execution with all those forms; the attestation must be coextensive with the things required to be done." 2 Maule & Selwyn, 582.

In *Lempriere* v. *Valpy*, 5 Simons, 119, the court drew the distinction. The instrument was to be executed in the presence of witnesses; and the court said, "It is to be observed that the terms of the power did not require the witnesses to make any written attestation at all. The case is therefore free from the objection that was made in *Moodie* v. *Reid*, 7 Taunt. 355."

In *Moodie* v. *Reed*, the execution was to be "attested." (6 Cond. Chan. 335.)

In *Hougham* v. *Sandys*, 2 Simon, 95, the deed was required to be "attested" by witnesses. The deed as made had the clause "in the presence of," which was signed by the witnesses, but there was no attestation clause. It was declared inoperative for want of it, because "the witnesses should, by their written attestation, give their evidence that the writing was signed, sealed, and delivered." (2 Eng. Cond. Chan. 143.)

These cases show that, in cases where a will is required to be "attested" by witnesses, the mere subscription of their names is insufficient, but they must sign a written statement of the facts required to be attested. If it be said these cases relate to the execution of powers, the obvious reply is, there can be but one and the same meaning given to the words, "attested by witnesses," whether used in a power or a statute.

What is to be "attested" by the witnesses? Undoubtedly the signing and publication—acts of the testator. The witnesses are not required to state the presence in which they certify; hence they need not say, in their attestation, that they attest in the presence of the testator, because "the statute does not require that this circumstance shall be taken notice of in the attestation." 1 Lomax on Exors. 30, § 15.

If the statute did require it, the omission would be fatal, and could not be supplied by presumption.

"If," said Lord Eldon, "the real meaning of this power is, that there shall be an attestation upon the instrument, of the signing, as well as the sealing, and there is upon the instrument no such attestation, it is not a case for the presumption of a jury that the act

was done, which appears not to have been done." *Wright* v. *Wake-ford*, 17 Ves. Jr. 459.

These cases define, clearly, the meaning of the attestation required by the statute; and the only question for controversy is, what are the facts to be thus attested? Undoubtedly, signing is one. So is publication; and it is immaterial what shall be held to be a publication. I submit that, upon a proper construction of our statute, it is not enough that the witnesses know that the party signs some paper, of what character they know not. A person is authorized by the statute to dispose of property by will, provided that will be signed, attested, &c. The very thing to be attested is the fact of the signing of a will; the witnesses must know, from the testator, in some form, that he signs the paper as his will. It is not the mere written signature of the testator that is to be attested, but his act of making his will. The statute declares, that a person " shall have power, by last will, to devise, &c., so as such last will and testament be signed by the testator; and, moreover, if not wholly written and subscribed by himself, or herself, be attested by" witnesses. Leave out the specification of the case when it must be attested, and it reads thus : " So as such last will and testament be signed by the testator, and attested by" witnesses. What is to be attested? The statute gives the answer, "such last will and testament, signed by the testator;" and the witnesses cannot attest the fact of a will signed, unless they know, from the testator, that he signs the instrument as his will. See *Hogan* v. *Grosvenor*, 10 Metc. 56, 57.

If this be a statutory requisite, there is an end of the question, and sound policy seems to require that the attestation should show, it was made in the presence of the testator.

Whatever may be the practice of other courts, their settled policy here is, " to follow the terms of our statutes, and to adhere closely to their provisions." *Smith* v. *Westmoreland*, 12 S. & M. 665.

The case cited by Mr. Harris, 2 Harris & Johnson, 112, does not sustain the appellee. It shows a long possession under the instrument.

The paper was held admissible " from the length of time which has elapsed since the making of the will," accompanied with long

possession under the instrument. It was a presumption indulged in favor of long possession.

But what was the fact presumed? Not any fact required to be "attested" by the witnesses; it was no act of the testator, which are the only acts to be attested, but simply the other fact, of the presence where attested. The statute requires the witnesses to attest certain acts done by the testator; they are not required by the terms of the statute, to certify when or in what presence they attest. Moreover, the paper in that case was duly certified from the records of the prerogative court. The report does not profess to set out the whole proof in the case, and we cannot say what further facts were relied on to raise the presumption; we know there was the fact of long possession under the will.

*W. P. Harris*, for appellee.

If we shall succeed in establishing the propositions, that the rule requiring proof by the attesting witnesses to a will, is complied with by the production and examination of them when they are competent, and in the power of the court; and that, when produced, their testimony is not conclusive either way, but may be strengthened or destroyed by other independent evidence; and that where the witnesses are dead, beyond the jurisdiction of the court, or have become incompetent by reason of subsequently acquired interest, or insanity, or have become infamous, or have lost, by lapse of time or disease, all memory of the transaction, proof of their handwriting, coupled with other circumstances, tending to show a valid execution of the will, is sufficient to establish it, then we insist that the proof here is sufficient. These propositions can be established both by reason and the authority of decided cases. Before proceeding to the examination of the legal propriety of these propositions, we propose to make a brief summary of the proof; to notice those facts and circumstances, which, if the rules of evidence permit to be weighed, we think, leave no rational doubt on the mind, that the will is genuine; that it was intended as a valid testamentary act, and was duly executed.

The will is more than twenty-three years old by its date, and there is unmistakable evidence that it has existed in its present form, with its signatures and indorsements, in a custody free from

suspicion, from within a few months after its date, and the death of the testatrix, down to the present time. We have evidence that, within three months after the date of the will, an attesting witness swore, in open court, that he saw the will executed; that he signed it as an attesting witness; and that he saw the other attesting witness (who had died on the 3d of October, 1833, preceding) sign the will; and that the testatrix was of sound mind. All doubt, as to the genuineness of the will, and as to the fact that it was produced by the testatrix in its present form, with the intent to give effect to it as a testamentary act, is totally excluded. No apprehension can arise, in the mind of any one, that a spurious will was established in the court below. We have indubitable evidence of the genuineness of the signatures. The surviving attesting witness proves his own handwriting and that of the deceased attesting witness. We have the sworn statement of the surviving attesting witness, that he recollects that the testatrix made a will, and that he believes that the one offered for probate, was made in good faith, and that he would not have attested it, unless it had been duly executed, or so intended, though the facts attending the execution of it have, from the lapse of time, faded from his memory.

One fact, and only one, remains to be shown by the circumstances. We will be able to show that this fact must be presumed, or ought to be presumed, from signatures alone; but there are circumstances proved, independent of signatures, from which, a jury or a court ought to infer the fact. That fact is, that the attestation was made in the presence of the testatrix. The witness swears that the testatrix was, as he recollects, at one time, sick at the house of his father, the other attesting witness; that he is satisfied that he wrote the will himself, and thinks it was written whilst the testatrix was at his father's house, and that she died a short time after the date of the will; that about the time of the date of the will, he, the witness, lived with his father. These circumstances bring all the parties making and signing the will together at the same house, at the time the will was executed. The illness of the testatrix and the making of the will, and her death following soon after, point to that time and place, as the time and place of making the will. The surviving attesting witness wrote the will, and wrote her name, and the words, "her mark." His affidavit of the 22d

December, 1833, shows that he was present and saw her make her mark, and heard her declare the instrument to be her will, and publish it as such. He of course was present at the time and place, when and where the testatrix signed and declared the will. To whom would she publish and declare the will? To those who were to witness the act and declarations—the attesting witnesses.

If the witness was present and saw her sign, the means of signing were present also, and moreover, the purpose to make a testamentary act complete, existed at that time. Having then the fact that the witness did sign, and the fact that all parties were in the same house at the same time, with the means of complete execution, and the purpose to execute, all coexisting, is it not in the highest degree probable, nay, is it not almost morally certain, that they did all sign together, according to the known principles of human conduct? The usual course of parties, under such circumstances, would be to sign at the same time, and in each other's presence. The instances in which it is not done, are rare exceptions occasioned by accident or inability. The purpose to do so, almost invariably exists, and unless accident intervenes, it is usually done. Can there arise in our minds any doubt that the statute was complied with, as to attestation? The court below stood as a jury as to matters of fact: could a jury fairly resist this proof, when there is no fact or circumstances tending to contradict the presumptions created by these circumstances? It should be borne in mind, that the statute prescribes no rule as to the proof which shall be required to establish a will, and we are left to determine, what shall be sufficient by the settled principles of evidence.

We have said, that there is nothing in the evidence which tends to contradict the presumptions in favor of a legal execution. Two circumstances were relied on in the court below, as tending to impair the force of the presumptions arising from proof of signatures, and the circumstances detailed. First: the fact that the witness, Ellis, had made the affidavit referred to, at a time when his recollection was not impaired by time, and had failed to state in that affidavit, the fact, that attestation took place in the presence of the testator. Second: the fact that no action was taken on the will, at the time of making the affidavit, or at any time during the many

years which have since elapsed. Of the weight to be attached to these circumstances, we propose to speak briefly.

In the case of *Hall* v. *Gittings*, 2 Harris & Johnson, 122, 123, are to be found affidavits, made by witnesses to a will, two years after its date. These affidavits did not state that the witness attested in the presence of the testator. The will was offered as an instrument which proved itself, being over thirty years old; but an objection was made, that the affidavit did not state that the witness attested in the testator's presence. The court overruled the objection, and suffered the will to be read to the jury, with the remark, that the due execution of the will was to be presumed from the lapse of time. The circumstance that there existed affidavits made, whilst the transaction must be supposed to have been fresh in the mind of the witness, was not allowed to influence the presumption arising from mere lapse of time. But on general principles it is wrong to presume against a fact, because a witness has failed to state it, unless we are assured that his statement was designed to contain all he knew to exist, or that he was required to state all, or knew that it was necessary to state the fact omitted. It is quite evident now, that the witness must have known facts, which he did not then state, in connection with the making of the will. He states that he did not know the legal requisites of a will, and therefore, did not know which or how many of the facts which he knew, ought to have been stated. To give any weight to the circumstance, we should be reasonably certain that the absence of the statement was not the result of ignorance or negligence, and that the omission of it, was the result of design or inability to make it. How can we be certain or satisfied of this, unless it is apparent that the witness knew what facts it was necessary to state, or that the person who drew the affidavit knew what facts it ought to contain ? It does not appear that the affidavit was made upon full examination. Our own observation teaches us that affidavits are often prepared out of court, and the oath administered in court by a clerk, who does not read them; and we also know, that it is an every day occurrence, that these affidavits are found defective, not because of inability to state facts, but from ignorance that they ought to be stated. When we come to the case of probating a will, the affidavits of the

witnesses are invariably drawn up by persons other than the witnesses themselves, and are read over to them. If the affidavits contain facts which the witness knows to be true, he swears to them and does not feel called upon to swear to more, although he may know more. The person who draws the affidavit undertakes to put down the legal requisites of a valid will and a valid attestation; but how often is it that he omits, from ignorance or oversight, material facts? Viewed in this light, this affidavit dwindles into insignificance, as a circumstance against the validity of the will, and if it raises a presumption at all against a fact omitted, it is of too slender a nature to be safely confided in by the court. And it was so deemed, as we see in the case cited from Maryland.

The other circumstance relied on, is the length of time which has been suffered to elapse, and the fact that no action of the court followed the affidavit of Ellis. Lapse of time in probating a will can have but little weight against circumstances which of themselves exclude all idea of fraud or imposition in the execution of it. There is no limit as to the time within which a will may be proved or probated. 1 Lomax on Exors. 96.

Besides, there is enough in the record to show that one might have reasonably inferred, that the will had been probated; facts which rebut all idea that the will was rejected as spurious, or invalid, and lead the mind almost irresistibly to the conclusion, that at the time the witness Ellis made his affidavit, the will was deemed to be probated, although there is not now, according to the decision of this court, that evidence of it which the law demands. The fact that the affidavit was indorsed on the will shows that the affidavit was deemed sufficient. The will was recorded and remained upon the files of the court, and by positive direction of the statute, only such wills as have been duly probated, are to be recorded and remain upon the files of the court. As to the delay in the assertion of rights under the will, we might say, and there seems to be no impropriety in saying it, that the answer is to be found in the records of this court. It cannot be supposed that this court will fail to see that this is the identical will which was under consideration in the case between the same parties, on writ of error to the Circuit Court of Copiah county, or fail to consider the decision in that case, in deciding this.

There are, however, facts in this case from which one might infer the reason of the delay. The legatee now seeking to establish the will, is the grandson of the testatrix, and the son of William H. Lawrence, one of the heirs at law. It is altogether reasonable to presume, that he was a minor at the period the will was presented to the court, and remained so for a considerable time afterwards.

The failure of the court to take any action on the will, as by the appointment of an administrator, is susceptible of a very intelligible explanation. No executor is named in the will. The bequests and devises were, as will be seen in the will, to take effect in possession upon the death of the testatrix. She evidently thought that an administration upon her estate was unnecessary. She left nothing to be done but the delivery of the legacies. The establishment of the will, the record of it as permanent evidence of title, was all that was desired by those who were the beneficiaries. The legatees took their several legacies; that of James Lawrence naturally went to the possession of his father, his natural guardian, and there the matter rested. If there had been any necessity for administration under the will, or had any one applied for it, the court would have made the appointment, and thus have furnished that evidence of approval of the will by the court, required by the decision of this court, in the case referred to, and which has led to this proceeding. Why, if the will was rejected, did not those interested as heirs at law, seek to have administration, as in case of intestacy? The law makes a different disposition of the property, from that made by the will, and administration was necessary. If a grant of administration as of an intestacy could have been shown, it would have been shown by the appellants.

The sale of the property bequeathed to the appellee, by his father, W. H. Lawrence, to Thomas D. C. Lawrence, in 1840, is a circumstance which cannot in the slightest degree influence the controlling current of facts and presumptions, which sustain the validity of the will.

The decision of this court does not aid the appellants. The result of that decision was, that there was no evidence that the court had approved the will. No suspicion is cast upon its validity.

On a review of the evidence before the court below, we are satisfied that it established the will, provided the evidence was admissible and could be weighed by the court, one witness being dead, and the other having lost all memory of the transaction; and we now proceed to show that it was admissible, and was entitled to the weight given to it.

In this investigation, the legal requisites of a valid will must be separated, in our minds, from the proof required to establish a compliance with these requisites in court, in a cause in which the execution of a valid will is to be shown by evidence. The ideas suggested by the two propositions are distinct, though sometimes confounded. The requisites of a valid will are fixed by the statute, and are not subject to modification by time or accident. We cannot dispense with them. The evidence which is required to prove the execution of a valid will, depends upon the general law of evidence, framed with reference to the principles of reason and experience, subject to modification by time and accident, and declaring as a leading and fundamental principle, that the best evidence of which the nature of the case admits, is to be produced, and if that evidence, whether primary or secondary, be such as to create a fair and reasonable presumption of the existence of the fact intended to be established, it is sufficient.

The statute of wills has not prescribed the kind of proofs which shall be demanded when a will is sought to be established, but it has required that it shall be attested, that a certain number of persons shall be "placed about the testator," or shall attest the execution of the will, so that in any contest about it they may be produced and examined. The object was to prevent forgery and imposition. These attesting witnesses, upon a general principle, must be produced, if possible. They ought to be produced as persons selected by law, or properly perhaps by the testator, to give evidence of the manner of the execution of the will in case of a controversy about it.

But it is well established, both by reason and adjudged cases, that when produced, their testimony is not conclusive either way. A will may be established against their testimony, directly negativing execution according to the required forms, and it is equally well established that a will may be successfully overthrown, against

their testimony directly affirming execution according to the required forms. *Lowe* v. *Joliffe*, 3 Burr, 1244; 1 Roberts on Wills, 138; 1 Phillips' Evidence, 502; 1 Williams on Executors, 82, 83; *Jackson* v. *Christman*, 4 Wendell, 277, 283; 2 Barb. Ch. Rep. 40. The statute does not require that all the subscribing witnesses shall be produced; nor that, when produced, each witness shall prove a compliance with all the requirements of the statute. Proof by subscribing witnesses is dispensed with, when they are dead, or beyond the jurisdiction of the court, or have become incapacitated by infancy, insanity, interest, or loss of memory. 1 Greenleaf's Evidence, 640, 641, 642. The will may be proven by other evidence, when from defect of memory the attesting witnesses fail to prove it. 1 Williams on Executors, 82, 83; 4 Wendell, 282; 10 Leigh, 13.

Under our statute, and under similar statutes elsewhere, it is settled that the subscribing or attesting witnesses need not attest in the presence of each other; that one may attest, seeing the testator sign, and another may attest at another time, the testator acknowledging his signature. The statute requires the witness to attest in the presence of the testator, but does not say that the witnesses shall attest in the presence of each other. Phillips' Evidence, 499; 2 Greenleaf's Evidence, 562. *Dudleys* v. *Dudleys*, 3 Leigh, 436; 4 Kent Com. 580 (516). Lomax Exors. 31.

The result from these determinations is, that a witness is not required to prove what he is not required to attest, to wit, that he saw the other witnesses attest in the presence of the testator, for he may attest legally without seeing the others attest, or without knowing that others had attested or would attest. It is sometimes the case, that witnesses attest at different times, and at different places. Accident or necessity may occasion this. They may or may not all be present, at the different times and places, as accident may determine; but the law does not require them so to be present. This position is not designed to infringe, nor does it infringe the rule, that there must be proof of some kind, that the requisite number of witnesses attested in the presence of the testator. It is established to show, that each of the attesting witnesses, though produced, is not required to prove everything necessary to constitute a valid will, and that in a case where only one attesting witness can be produced, though he may fail to prove that other subscribing

witnesses, who are dead, absent, or beyond the sea, attested the will in the presence of the testator, the will may, nevertheless, be properly admitted on other proof, to wit, proof of their handwriting, &c. 2 Greenleaf's Evidence, 562; *Dewey* v. *Dewey*, 1 Metcalf, 849; 3 Powell on Devises, (64) 110. *Jones* v. *Lake*, 2 Atkins, 177.

The several propositions above stated, are founded on the authority of text writers, and of decisions universally approved, and they have been stated carefully; they are reasonable, and believed to be incontrovertible. If they are sound and well established, then we must not decline the consequences fairly to be deduced from them, and these consequences are:

1st. That the rule requiring the production of subscribing or attesting witnesses, when wills are to be established, is not a statutory rule, because if it were a rule of the statute, it could not be dispensed with, or modified, any more than the rule as to attestation can be dispensed with or modified.

2d. That the rule as founded on the supposed intention of the legislature goes no further than to require that the witnesses shall be produced, if possible, and when produced, ought to be examined, or may be examined. The will may be established independent of their testimony, whatever it may be.

The principle of the rule is, that as certain persons have been appealed to, to witness the execution of an instrument, they ought to be called. A failure to produce them, leads to the inference, that if called, they might prove circumstances showing the invalidity of the instrument. There is no rule of the statute, or of the general law, requiring that they shall prove a particular thing. All rules as to human testimony, must be framed with reference to those infirmities and casualties incident to mankind. If a testator has complied with the statute in executing a will, it ought not to be defeated by the corruption of the witness, or by the loss of his recollection, provided from other legitimate sources and circumstances we can derive evidence of the genuineness of the will, sufficient to satisfy the minds of the court or jury. The rule does not tie us down to the subscribing witnesses, and is complied with, by the production and examination of them. 1 Williams on Exors. 279, 290.

If a will can be established when the subscribing witnesses testify to its non-execution, surely the rule will allow us to establish

HARVARD LAW SCHOOL LIBRARY.

Fatheree and wife *v.* Lawrence.

it in cases free from suspicion, when from failure of the memory of the witness, he may not recollect all the facts, and more especially when all that he does prove, tends to prove a valid execution of it. That these are legitimate deductions, and that they have received the sanction of the courts, we quote the case of *Le Grange* v. *Le Grange*, 19 Johnson, 386, and *Clark et al.* v. *Dunnavant*, 10 Leigh, 13. The case at bar is within the principle of these decisions, and the cases are closely allied in matters of fact. The attention of the court is invited to the reasoning of the judges in these cases, and to their review of decided cases. In the case first cited, Judge Spencer held in substance, that in case of a will attested by three witnesses, two of whom are dead, the will would be well established by producing the survivor, notwithstanding his recollection of the transaction had failed him, his handwriting being proved by him, and that of the other attesting witnesses being also proved. He says: "The law does not require impossibilities, and therefore, when the will has been executed for a long period of time before the trial, it is not ordinarily to be expected, that the witnesses will be able to remember all the material facts." In the case from 10 Leigh, there were three attesting witnesses; all were produced and sworn, and each proved his own signature. Two of the witnesses, however, had no recollection of the circumstances of the execution and attestation of the will. One testified that if required to attest the will he would have done so, whether the testator was present or not; the other testified that he did not know what the law required as to attestation; the third witness proved his own attestation only, and the acknowledgment by the testator that it was his will. The execution and attestation of the will appeared to be regular. The witnesses testified that they would not have attested unless requested so to do, &c.

The court decided that the will should be admitted to probate. On the subject of the rule requiring proof by the attesting witnesses, the court say: "They are, indeed, called upon to prove the will, not because the statute requires that they shall prove a compliance with all the requisites of the law, but because they would be most likely to prove them, and because, upon principles of the common law, the attesting witnesses to every instrument, must be produced if living and within the power of the court." No sounder

exposition of the rule can be found than this.   "From the whole of the cases," say the court, "we deduce the rule, that the defect of memory of the witnesses, will not defeat the will, but the court may, from circumstances, presume the due execution of the will."  Judge Tucker, in the conclusion, says: "Nor do I apprehend any evil from this decision.  It may, perhaps, sometimes lead to the establishment of wills not duly executed, as doubtless may be the case; also, where the witnesses are all dead or absent, and everything is presumed from their attestation.   But far greater mischief would arise from a contrary decision, which would make the rights of every devisee and legatee depend not only upon the honesty, but also upon the slippery memory of witnesses."   The principles which governed the decision in these cases are collected from decided cases in England.   (See 1 Williams on Executors, 82, 83.)   This reference is shown to be applicable by the explanation at the conclusion of this argument.

It must be admitted, that the case at bar differs from these in no essential point, except in the fact of the affidavit of 1833.   This affidavit, we think, materially strengthens the case, although, as we have stated, it was relied on to rebut the presumption arising from the lapse of time and proof of handwriting.   It establishes that a will was made by a competent person, and attested, *i. e.*, signed by witnesses; that the will was executed in good faith, and was published, and declared to be a will.   It relieves us from all apprehension that we are establishing as a will, that which might not have been intended as such.   It is consistent with every legal presumption arising from proof of signature, and from the appearance of the instrument itself, and it contradicts no presumption in favor of the will.   Total loss of all memory of the particulars attending the attestation of a will, when handwriting is satisfactorily proved, and other facts are established which show that the witness once had a knowledge of the transaction, and that his loss of memory is not feigned, but real, especially where a great length of time has elapsed, is, as we have seen from the cases in 10 Leigh and 19 Johnson before cited, and ought to be, regarded as standing on the same footing in principle with the death of the witness, or the total loss of the faculty of memory.   The necessity of the case is established, which admits of a departure from the rule requiring proof

by the attesting witnesses. The witness may be legally competent as a witness generally, but he is unable to testify from causes which are almost as certain as death itself to put it beyond his power to testify. The influence of "time's effacing fingers" upon the memory is almost as inevitable as death itself. The law assumes, that the memory will of necessity fail after the lapse of years, and the rule which admits old writings to prove themselves is founded partly on the presumption that the witnesses are dead, and partly on the presumption that, if living, all recollection of the facts must have faded from their minds.

It may be regarded as part of the settled law of evidence in cases of wills, that subsequent causes, operating to disqualify the witness, let in proof of his handwriting, and evidence from other sources, to establish the will. In England, they have, by a late statute, declared, that when the attesting witness, required by law, " becomes incompetent," the will may be established by other evidence. This statute but declares the law, as it then stood in England, and as it now stands in this country. It is a statute which made it requisite that wills of personalty should be attested. Under that statute the courts in England hold, that loss of memory of the transaction. lets in secondary evidence, treating it as standing on the footing of subsequent incompetency. 1 Williams on Executors (last edition), 81, 82, 83, and 289. See also New York case, *Janney* v. *Thorne*, 2 Barb. Ch. Rep. 40; *Nelson* v. *McGiffert*, 3 Id. 158.

The laws of Pennsylvania, requiring proof by two witnesses, explain the decisions in that State.

We have not noticed the evidence connected with the possession of the property, because that circumstance is material only in cases where there is no evidence but the instrument itself. The will, in this case, was twenty-three years old, but was not offered as an instrument which proved itself. Evidence, independent of the presumption arising from the existence of the instrument, was introduced, to wit, evidence of handwriting, &c. &c.

In conclusion, it may not be improper to notice the decision of this court on the question as to the fact whether the will was probated. The court cannot fail to perceive that the present controversy arises on the same will which was under consideration in the case of *Fatheree* v. *Lawrence.* (Opinion Book.) The court having

decided that there was no affirmative evidence that the will had been probated, the legatee is now seeking to obtain the probate, in order to the effectual assertion of his rights. The decision referred to, was, in effect, that there must be some affirmative evidence of approval by the court, indorsed on the instrument, or entered in the minutes, and said, that had a grant of letters testamentary followed, this would have amounted to evidence of approval. The court did not undertake to say, that there was any circumstance leading to the opposite conclusion, to wit, that the court had rejected the will. We have already adverted to the fact, that no executor is named in the will, as explaining the absence of this evidence, and to the fact of the recording of the will, which is directed only in cases where the will has been approved, as rebutting any presumption that the court had regarded the will as spurious or invalid. The contestants, however, it would seem, sought to raise a presumption of rejection by the court, by adducing instances of probate "noticed in the minutes." It is clear, from the decision referred to, that there might have been valid probates not noticed in the minutes, but noted on the instrument, or, as in the case of the will of Grant, indicated by proceedings which can be accounted for only on the supposition that the will was approved.

In conclusion, we respectfully remind the court, that the court below stood as a jury in regard to the facts, and should this court entertain doubts as to the weight of the evidence, that doubt ought to be resolved in favor of the judgment below.

There was we may say, proof to moral certainty, that the will was executed by Elizabeth Lawrence, and that the two witnesses, George Ellis, the father, and George Ellis, Jr., the son, subscribed in good faith as attesting witnesses. There can be no doubt that it was intended as a will. We have the presumption arising from the will itself, apparently executed according to law,—the presumption arising from clear proof of handwriting. The only point about which there can be any controversy, is as to whether the statute in one remaining particular was complied with, to wit, whether the attestations were made in the presence of the testatrix. There is no fact in the cause tending to contradict the presumptions of legal attestation from proof of signatures, and we think that we have shown that the general tenor of the evidence, and the legal pre-

sumptions arising from it, establish this fact with reasonable certainty. The preponderance of evidence is in favor of the judgment below. There is certainly nothing in the case to warrant the belief that the statute was not complied with; on the contrary, every reasonable presumption, arising from the facts shown, lead to the belief that it was complied with.

HANDY, J., delivered the opinion of the court.

This is an appeal from the order of the Probate Court of Copiah county, admitting to probate an instrument of writing, purporting on its face to be the last will and testament of Elizabeth Lawrence, deceased, which bore date the 7th September, 1833.

The paper was offered for probate at the July Term, 1856, of that court, by the present appellee, who is one of the legatees named in it; and the application was resisted by the appellants, as administrators of Thomas D. C. Lawrence, who claimed the property bequeathed by the will to the appellee. Upon the investigation of the case, the material facts proved were, in substance, as follows.

It appears, by written entries made upon the paper, that it had been filed for probate, in the Probate Court, on the 11th day of December, 1833; that it was recorded in the Record Book of Wills, and that it was taken from the files of that court, when it was propounded for probate on this occasion. Upon its face it purported to be the last will and testament of the testatrix in due form, and to be signed by her, thus: "Elizabeth ☒ Lawrence, [s.];" and it mark. was also signed by subscribing witnesses, thus: "Test. George Ellis, George Ellis, Jr.;" and an affidavit appears written upon it as follows: "Probate Court, December Term, 1833. George Ellis, Junior, one of the witnesses to the within will, being duly sworn, did depose and say, that he saw Elizabeth Lawrence, the testatrix therein named, sign and seal the same, and heard her publish, pronounce, and declare the within writing to be her last will and testament, and that he saw George Ellis sign the same as the other witness, and that at the doing thereof, the said testatrix was of sound and disposing mind and memory, as far as he verily believes.

"GEORGE ELLIS, JR.

"Sworn to, and subscribed in open court, this 22d December, 1833.

"ROWLAND JOHNSON, *Clk. pro tem.*"

It was admitted, that no order or entry of any kind was to be found among the minutes of proceedings of the Probate Court of that county, in relation to the will of Elizabeth Lawrence, although a minute-book of its orders and decrees was kept by that court.

George Ellis, Jr., one of the subscribing witnesses to that paper, was produced as a witness, and stated in substance, that Elizabeth Lawrence was sick some time at witness's father's house, and he thinks that the paper was written during that time, and that she died a short time after the date of the instrument; that it is in his handwriting, and he is satisfied that he wrote it, and believes that the name signed to the affidavit indorsed upon it, is his signature; that his father, George Ellis, the other subscribing witness to the instrument, died in October, 1833; that he believes that he, the witness, signed the name of the testatrix to the instrument, and does not think that he would have signed her name to it had he not been requested by her to do so; that all he recollects is, that there was a will of Elizabeth Lawrence, and he only recollects that, from the fact of his having written it; that he recollects nothing about the execution of the instrument, but thinks that he would not have attested and subscribed it, had not the instrument been duly executed; but that he might have subscribed an illegal instrument, and does not know that he knew, what was a legal instrument; that he was living with his father, George Ellis, at the date of the instrument, and believes that Elizabeth Lawrence was there at that time; that the signature of the first attesting witness is in the handwriting of his father; that he cannot recollect whether he and his father subscribed their names as attesting witnesses to the instrument in the presence of the testatrix, and all that he distinctly recollects about the transaction is that Elizabeth Lawrence made a will, but from lapse of time, all the circumstances connected with and attending its execution have faded from his memory; that it was the common understanding among her relatives, as he believes, that she had made a will; that she was more than twenty-one years of age at the time, and he supposes that she was of sound and dis-

posing mind, but as to that he could not speak positively, owing to lapse of time.

On cross-examination, he stated, that he believes that his recollection of the facts and circumstances connected with the execution and attestation of the will, was more perfect at the date of the affidavit indorsed upon it, than at the time of his present examination, by reason of the lapse of time ; that he believes the will was executed in good faith, and that it was intended to be executed as other wills are. He further stated, that he had no independent recollection of writing the will, of signing it as a witness, or of signing the name of the testatrix to it; and that he only believes that he wrote it, signed it as a witness, and signed her name thereto, from the handwriting, believing it to be his own.

It was further shown, that Elizabeth Lawrence left three heirs at law, Thomas D. C. Lawrence (who is since dead, and the appellant's father and wife are his administrators), William H. Lawrence, the father of the appellee, and Mrs. Chain; and it was admitted that Thomas D. C. Lawrence had possession, at the time of his death, of the slave bequeathed in the will to the appellee, and that he purchased the slave and her children, in the year 1840, from William H. Lawrence, the appellee's father, from whom he took a bill of sale, and that the slave went into the possession of Thomas, under that bill of sale.

Other evidence was offered, for the purpose of showing that the practice in that court had been loose about the time this instrument was offered for probate in 1833; but the particulars of it are not material to the consideration of the case as it is here presented.

The subject-matter of this controversy has been heretofore before this court upon the question, whether this will was to be considered as having been legally admitted to probate, in virtue of the indorsements made upon it in the year 1833, and of its being recorded by the clerk in the book for the registration of wills in the Probate Office of Copiah county. That question was decided here in the negative, *Fatheree* v. *Lawrence*, 30 Miss. 416 ; upon the ground that it did not sufficiently appear that the Probate Court had either admitted, or refused to admit, the will to probate. And it is to be inferred, that it was in consequence of that decision that the instrument was again propounded for probate in the proceeding which is

now before us.   The question for decision now is, whether the evidence adduced, upon the presentation of the will since the former decision, was sufficient to establish its due execution, and to entitle it to probate, and whether the court below erred in admitting it to probate.

It appears, from the evidence, that the instrument was attested by two witnesses, George Ellis and George Ellis, Jr.; the former of whom died shortly after its date, and the latter was called to testify in relation to the matter, after the lapse of nearly twenty-three years from the date of its execution.   He proved his own signature and that of his father, the other subscribing witness; that the instrument was in his handwriting, and that the signature of the testatrix to it was also in his handwriting; but that, from lapse of time, all the circumstances attending its execution had faded from his memory.   He further stated that he did not think that he would have signed the paper, as a witness to its execution, had it not been regularly executed, though he was not certain that he knew what was necessary to its legal execution; and that it was the common understanding among the relatives and friends of the testatrix, that she had made a will.

The statute regulating the execution of wills simply requires that certain formalities shall be complied with; but no mode of proof of such requisites is prescribed, and accordingly the principle is well settled, that when the formalities required by statute, and which from their nature must be shown by the face of the paper, appear to have been complied with, presumptions may be indulged, under certain circumstances, that other incidental requisites were complied with, so as to give validity to the will.   Upon this principle presumptions have been allowed in a variety of cases, after a great lapse of time, to sustain wills regular on their face, in cases of death of witnesses or defect of memory.

In *Jackson* v. *Luquere*, 5 Cowen, 221, the rule is stated to be, that "if the witnesses are dead, proof of their handwriting and of that of the testator, are properly to be left to the jury, upon the question, whether under such circumstances, it may not be presumed that the formalities of the statute were observed."

In *Fetherly* v. *Waggoner*, 11 Wend. 599, the question arose, whether the three subscribing witnesses attested the will *in the pre-*

*sence of the testator.* Two of the witnesses being dead, the third one was called, and stated that she did not recollect whether one of the witnesses was present or witnessed the will. This witness was called after the lapse of thirty-six years, and it was held, in effect, that her testimony was sufficient to establish the will, because after so great a lapse of time it was not to be expected that the circumstances attending the transaction could be recollected distinctly.

In *Jackson* v. *Le Grange*, 19 John. Rep. 386, a subscribing witness proved the handwriting of a subscribing witness who was dead, but stated that the deponent never knew the testator, nor did he know that he had ever seen him, nor had he any recollection of any fact in relation to the execution of the will, except that derived from the fact of his name being subscribed as a witness, from which he supposed that he must have seen it executed. He knew the requisites of a good execution of a will, but had no knowledge or recollection that he saw the other witnesses sign their names, or that they saw the testator sign his name. The proof was held to be insufficient, because a third subscribing witness was shown to be living, and was not called; but otherwise, the testimony of the witness was held to be sufficient. And the court say, "The law does not require impossibilities, and, therefore, when the will has been executed for a long period before the trial, it is not ordinarily to be expected that the witnesses will be able to remember all the material facts. In this respect, a will may be compared to a deed, the execution of which is denied. If the subscribing witnesses prove their signatures, though they may not be able to recollect the delivery, yet if they declare that they never subscribed as witnesses without a due execution of the deed by the grantor or obligor, such proof would be sufficient. So, also, if the subscribing witnesses to a will are dead, the proof of their signatures and that of the testator, is sufficient. Prima facie the law will intend a due execution."

The same principle was sanctioned by the Court of Appeals of Virginia, in *Clarke* v. *Dunnavant*, 10 Leigh, 13, when the probate under consideration depended, as was said by Judge Tucker, "upon the question how far the defects of the memory of the witnesses can be supplied by mere inference from their attestation," some of the requisites of the statute being proved.

In that case, the will purported to be executed in the presence of three attesting witnesses. The first witness proved his own signature, and thought that the testator acknowledged it in his presence, from the fact of his having signed it as a subscribing witness, which otherwise he would not have done. The second witness proved his own signature, but had no recollection of the fact of signing it as a subscribing witness, and stated that he would not have subscribed it, unless he had been requested by the testator to do so; but that if the testator had acknowledged the will and requested him to witness it, he would have done so, whether the testator was present or not, at the time of his subscribing as a witness. The third witness proved his own signature, but had no recollection of having been requested by the testator, or by any other person, to witness the will; that he would not have subscribed it unless requested by the testator, and he had thought that everything about it was regular; he did not know how the law required wills to be witnessed, nor recollect when he subscribed as a witness, nor who was present, nor whether the testator was present.

In sustaining a probate granted under these circumstances, and where the witnesses were called after the lapse of only about nine years from the attestation, the rule is thus stated by the court: "That on a question of probate, the defect of memory of the witnesses will not be permitted to defeat the will, but that the court may, from circumstances, presume that the requisitions of the statute have been observed, and that they ought so to presume from the fact of attestation, unless the inferences from that fact are rebutted by satisfactory evidence."

And the same rule is held in *Dudleys* v. *Dudleys,* 3 Leigh, 443, where it is well said, that "a contrary course would defeat a vast number of deeds and wills; for it may often happen, and frequently does happen, that a witness, not only does not remember to have seen the signature, but he does not remember the acknowledgment or attestation; but when he sees his name subscribed by himself, as a witness, and knows that he would not have witnessed a blank or unacknowledged paper, he feels no more doubt of the due execution of the paper than if he distinctly recollected all the circumstances."

The testimony of the subscribing witness in this case is more full

and satisfactory than that in any of the cases above cited, and was abundantly sufficient to justify the presumption that everything necessary to the valid execution of the will was done, unless there be circumstances in the case destroying this presumption.

It is insisted, in behalf of the appellants, that there are such circumstances, and we will proceed to consider the reasons urged in support of that view.

First. It is said that the delay in probating the instrument affords evidence against its validity. There is no question of its genuineness, nor could there be under the proof, and the objections to it are confined to the sufficiency of its execution. It is said, that the failure to have it probated for so great a length of time, creates a presumption that it was not duly executed, and should not be admitted to probate.

But the force of this objection is destroyed by other circumstances in the matter. It appears that some steps were taken towards the probate of the will in December, 1833; at which time it was filed in the Probate Court, where it remained until produced for probate in the proceeding now under consideration. It was recorded by the clerk of that court in the Record Book of Wills, as a duly probated will, and no order of the court is shown refusing to admit it to probate. These circumstances, although not sufficient to show a legal probate, tend strongly to show that the parties in interest considered the will as duly admitted to probate. It appears by the former suit between these same parties, that the will was considered by the appellee and his counsel, and was held by the Circuit Court, to have been duly admitted to probate. And there is scarcely an unlearned man in the country, who would not act upon the belief, that a will, offered for probate in the Probate Court, with no order rejecting it, the original remaining on file in that court, and recorded in the book for the registration of wills, with other wills duly probated, was regularly admitted to probate.

Under these circumstances, therefore, we do not think that the delay in the proceeding now before us, raises any presumption against the validity of the will, or tends to destroy the presumptions in its favor arising from the evidence.

Secondly. It is insisted, that although the proof of the handwriting of the subscribing witnesses made by the witness, George

Ellis, Jr., when the will was admitted to probate, might be sufficient to warrant the presumption of due execution, after so great a lapse of time, yet as he was examined as a witness in 1833, upon the former application to probate the will, and did not then state that the will was signed by the witnesses in the presence of the testatrix, his failure to state that important fact, when his recollection of the. transaction must have been fresh, and when he must be taken to have stated all he knew about it, destroys the presumption of its existence, arising from the mere proof of handwriting and lapse of time.

This objection assumes, that the affidavit indorsed on the will, in 1833, must be taken as containing all the facts within the deponent's knowledge in relation to the execution and attestation of the will. But it does not appear under what circumstances the affidavit was prepared, nor that the affiant was produced and sworn in court, to state all the facts, which transpired upon the execution of the will, nor that he undertook to make a full statement of all the facts attending the execution. It simply appears that he made and signed an affidavit in open court, stating certain facts in relation to the matter; and it is highly probable that it was prepared by some other person supposed to be competent, and out of court, as such affidavits not unfrequently are, and that it was signed and sworn to by the affiant, under the belief that the facts stated in it were sufficient to establish the will. For it does not appear to have been taken as a deposition, under the direction of the court, nor to have been in any way acted upon by the court. And it appears, from the testimony of the witness in the last proceeding, that the affidavit did not state all the material facts within his knowledge in relation to the matter; for he there states that the testatrix was of lawful age to make a will, which fact was omitted in the affidavit of 1833. To hold it, therefore, as conclusively stating all the witness knew in relation to the transaction, would be giving it greater weight and solemnity than its real character demands.

But in addition to this, there are other collateral facts appearing in the evidence, which tend strongly to show that the will was signed by the witnesses in the testatrix's presence, and to corroborate the legal presumption above stated.

It appears that the will was written by the witness, George

Ellis, Jr., whilst the testatrix was sick at the house where he and his father, the other subscribing witness, lived at the time; and that George Ellis, Jr., signed her name to it, to which she added her mark, in his presence, and declared it to be her will. And his name is found to it as a subscribing witness. It is in the last degree improbable, that he signed his name as a subscribing witness at another time, and not at the time the act intended to be attested was done, and when all the means of attestation were at hand. But he also saw George Ellis sign it, and his name appears to it as a subscribing witness, written on the line immediately above that of the witness deposing, which renders it almost certain, that if George Ellis, Jr., attested it in the presence of the testatrix, his father, whose signature preceded his, also attested it at the same time; for certainly neither of them could have attested it before it was signed by the testatrix. Then all the parties being together about the same house, the paper being written by one of them, who also signed the testatrix's name to it, saw her affix her mark to it, attested it himself, and saw the other witness sign it, it is beyond the bounds of all probability that the signing of the name of the testatrix, her affixing her mark, and declaring the instrument to be her will, and the attestation of the subscribing witnesses, were not all done at the same time; and if so, necessarily in the presence of the testatrix.

But if this objection were well taken, as to the testimony of George Ellis, Jr., it does not apply to the attestation of George Ellis, his father. Nothing is shown, to destroy the legal presumption of due execution, in the presence of that witness. And as the will was sufficiently executed, as to the personal estate, if signed and published in the presence of one witness, and the evidence was sufficient in law to establish its execution in the presence of George Ellis, it was properly admitted to probate, though its due attestation, by George Ellis, Jr., were not sufficiently proved.

We therefore consider this objection untenable.

Thirdly. The attestation of the subscribing witnesses is contended to be insufficient, upon the face of the paper, to admit it to probate, there being no attestation clause to the will, and the word "Test" being the only thing prefixed to the signatures of the subscribing witnesses. This is said to be insufficient, because the statute con-

templates, that the attestation should certify the facts, required to constitute a valid execution of a will. But we cannot sanction this view of the subject.

The object of the statute in requiring that a will should be "attested by the witnesses in the presence of the testator," so far as the form of the attestation is concerned, was to identify the instrument as that signed and published by the testator, and to prevent fraud and imposition in establishing spurious wills, and at the same time, to show the persons by whom the facts necessary to establish the will could be proved, when it should be produced for probate. All that was necessary for these purposes was, that the witnesses should sign their names upon the paper in the presence of the testator, in testimony of the fact, that it was the paper signed and published by him as his will. The attestation, so far as it is required to appear by the face of the paper, is merely formal; and however full and particular in its recitals of material facts, it does not prove those facts; for that has to be done by production of the subscribing witnesses. And although it is true that the attestation implies that the witnesses had knowledge of the facts necessary to make the instrument a valid will, yet it is not necessary that a compliance with these forms should be stated in it. It is sufficient, if it appear that they signed their names as witnesses to its execution, and that they be able to state, when called to prove the will, that the requisites of the statute were observed.

Accordingly, it is the settled doctrine, that no particular form of words is necessary to constitute an attestation. 1 Jarman on Wills, 74. And although the statute expressly requires, that the attestation shall be in the presence of the testator, yet it is well settled, that that fact is not required to be stated in the attestation; and it is sufficient if it can be proved by the witnesses at the trial. Willes Rep. 1; 6 Cruise Dig. 57; *Lord Rancliffe* v. *Parkins,* 6 Dow. Par. Rep. 202; Preston on Legacies, 18. And when the death of the subscribing witnesses prevents actual proof, a compliance with the statutory requisites will be presumed, though not expressed in the memorandum signed by them. 2 Strange, 1109.

Many cases are cited by counsel to show, that in the execution of powers, required by their terms to be executed "in the presence of witnesses," or to be "attested by witnesses," the attestation

should show that the express terms of the power were complied with. But there is a manifest distinction between the execution of powers, and the execution of wills.

When forms are imposed in the execution of a power, they must be strictly complied with; because they are matters of arbitrary requirement, which the grantor has seen fit to impose, as conditions to the exercise of the power, and to the vesting of the rights under it. 1 Sugd. on Pow. 250. If the forms imposed, appear on the face of the execution to have been complied with, a due execution is presumed, without further proof of observance of the terms required. But not so with wills; for the attestation in such cases is made with reference to further proof to be made. The essential thing is to be done in court. Proof must there be made, that the will was executed by the testator, so as to give it validity as a will. In the one case, the attestation, when regular, proves the time required to be observed; in the other, it is a mere incipient step towards the proof of the facts required to be established.

The construction contended for, would be a wide departure from the liberal rules which have always been sanctioned by courts, in regard both to the execution and construction of wills,—rules founded on the just principle, that such instruments must, from the circumstances under which they are prepared, necessarily be frequently drawn by, and under the direction of, persons but little skilled in legal formalities. And to subject them to strict technical rules would, therefore, defeat the intentions of many persons, whose wills were really executed in accordance with the substantial rules and reasons of law. Hence, courts have always shown a disposition, in such cases, to make forms yield to substance, and to respect what parties really intended to do, unless constrained by some inflexible rule of law, or the requisitions of the statute. In the present instance, we consider the construction contended for, unsustained, both by legal rules and by general convenience.

Lastly. The appellants rely upon various circumstances connected with the will and the property of the testatrix, as affording presumptive evidence that the will was not valid. Some of these circumstances have already been incidentally noticed, and disposed of. The others will now be considered.

1. It is said, that the testatrix, and both of the subscribing wit-

nesses, were ignorant of what was required by law, in the execution of a will; and that it cannot be presumed that they complied with forms, which they did not know to be necessary.

The probability is, that the testatrix did not know the requisites to a valid will, as she was unable to sign her name to the instrument. George Ellis, Jr., the draftsman of the will, states that he would not have signed it as a witness, if it had not been duly and properly executed, and in all things regular; but that he might have subscribed an illegal instrument; that but few men of the masses know what a legal instrument is, and that he does not know that he did. Upon this statement, it is said that he is shown to be entirely ignorant of the requisites of a will. But this appears to be an unfair view of the matter. A more just view of it appears to be, that although he thought he knew what was necessary to the valid execution of a will, yet that he might have been in error, as few men but lawyers were acquainted fully with such matters. And it appears from the manner in which the will is drawn, that its provisions are well expressed, and that he knew the formalities used in such instruments. It is signed by subscribing witnesses, as the law requires, and the circumstances of its execution, as above considered, go to show that it was properly attested. Under such circumstances, it is not just to assume, that he was ignorant of what was necessary to the valid execution of a will, and thereupon to found the presumption, that this will was not properly executed. The facts on which the presumption is attempted to be based, are not so strong in support of it as in the case of *Clarke* v. *Dunnavant*, above cited. But there is no evidence as to knowledge of George Ellis, his father, upon the subject. Yet it is assumed that he was ignorant upon the subject, from the fact that the will was drawn up by his son. This inference is certainly not warranted by the fact stated; for there might be many reasons why the father did not write the will, and still he might have been well acquainted with the forms necessary to be complied with, in the execution of a will, and have had those forms observed in this will. For instance, he might have been an invalid, and unable to perform the labor of writing the instrument at the time, though competent to direct it, and see that the necessary acts were done in its execution; and this is not im-

probable, as it appears that he died very shortly after the date of the will.

It cannot, therefore, be properly urged against the will, that the parties engaged in its execution, must be considered as too ignorant of the requisites to its valid execution, to justify the presumption that it was duly executed.

2. The long-continued possession of the appellants, adversely to the will, is said to raise a presumption against its validity. But that is an objection that goes rather to the rights of the parties as they may be affected by the Statute of Limitations, than to the validity of the will, under which one of them claims. There may be sufficient reasons, not now appearing, nor necessary to be presented upon an application for the probate of the will, why the appellee has not taken steps at an earlier period, to assert his right—such as infancy and the like. It is not improbable, that the appellee was, for a part of the time of this adverse possession, under the disability of infancy, and that such time could not be properly taken into consideration. But be that as it may (as there is no limit to the time for the probate of a will), before the fact of adverse possession could be held to create a presumption against the validity of the will, by reason of his acquiescence in the adverse title, and so as to preclude him of the right to probate the will, it should be shown that there was no impediment to the assertion of his rights, and that his acquiescence was tantamount to a disclaimer under the will, with a full knowledge of its legal character. We therefore consider this circumstance, as entitled to very little weight in the consideration of the case as it is now before us.

3. It is said that the fact that Thomas D. C. Lawrence, the appellant's intestate, and the principal legatee in the will, purchased from the father of the appellee the slave bequeathed to the appellee in the will, shows that the beneficiaries under the will considered it void, and treated the estate as intestate, and that the circumstance is entitled to especial weight, as it shows a repudiation of the will by the party mainly entitled to its benefits, and his conduct was against his interest. But we do not think that the facts mentioned warrant the inference attempted to be drawn from it. It does not appear that Thomas D. C. Lawrence did not claim or obtain the property bequeathed to him in the will, or that the other legacies

in the will did not go according to its disposition, except that to James Lawrence, the appellee. Nor does it appear that any letters of administration were taken, upon the estate of Elizabeth Lawrence, as one of intestacy, which, in all human probability, would have been done, if the will had been considered void. The conduct of the parties, therefore, instead of showing a recognition by them of the invalidity of the will, tends decidedly to show, that they acted under its dispositions, and, therefore, that no administration was taken as upon an intestate estate. And the probability of this state of facts is · not destroyed by the fact of Thomas D. C. Lawrence's purchase from the appellee's father; as it is not an unusual thing for a man to purchase property from one who has not a good title, under the erroneous belief that he has the right to convey, that hypothesis is much more probable, under the circumstances appearing in this case, than that Thomas D. C. Lawrence treated the will as void, and that the distributees treated the estate as intestate.

4. Another circumstance mentioned, as raising a presumption against the execution of the will, is that it purports to dispose of real estate, and has but two subscribing witnesses to it, and this, it is said, shows that the will was incomplete, and renders it inoperative as to the entire estate.

It is a question of fact whether it was the intention of the testatrix that a paper, purporting to dispose of both real and personal estate, should operate as a disposition of one, unless it could take effect as to both. *Jones & Robeson* v. *Kea*, 4 Dev. 302.

The single circumstance mentioned would tend to show, that the parties did not know that it required three subscribing witnesses, to make a valid will of real estate; but, taken by itself, it could not justify the presumption that the will was but partly executed, with the intention afterwards to complete it, which intention was never consummated. So far, however, as the circumstances of the transaction appear by this record, the presumption attempted to be raised is clearly rebutted; for it appears by the affidavit of 1833, that the paper was signed and published by the testatrix as a complete will. And although it is insufficient to pass the real estate, it is valid as to the personalty, and to that extent only was it admitted to probate.

5. Again : it is objected that, it appearing that the testatrix was a feme covert, the presumption that she so continued must stand until removed by evidence ; and there being no such evidence here, she must be considered as a feme covert, and incompetent to make a will.

The presumption of the continuing relation of husband and wife may certainly be rebutted by circumstances, and the contrary may be taken as conceded by the acts of the contesting parties. Here all the circumstances tend to show that the testatrix was a widow at the date of the will. She was living at the witness's house at the time, apparently as a feme sole, no mention being made anywhere in the record of her husband ; she undertook to dispose of property which clearly belonged to her husband, if alive, as the law then stood, which renders it highly improbable that he was then alive, and no attempt was made by the court below to show that she was then a feme covert, which, from the facility with which the fact could have been proved, and its conclusive effect against the will, must be taken as a concession by the contestants, for the purposes of this case, that the fact did not exist at the date of the will. We do not therefore feel authorized to say that the court below erred, in treating this as the will of a feme sole.

Therefore, considering all these circumstances above relied upon, we do not think them sufficient to destroy the presumption in favor of the validity of the will. And it follows from the views above taken of the case, that the decree of the court below is correct, and should be affirmed, which is ordered accordingly.